# STATE OF MICHIGAN

# COURT OF APPEALS

REESE PUBLIC SCHOOL DISTRICT,

      Respondent-Appellee,

v

REESE PROFESSIONAL SUPPORT
PERSONNEL ASSOCIATION MEA/NEA,

      Charging Party-Appellant.

UNPUBLISHED
December 30, 2014

No. 316528
MERC
LC No. 11-000155

Before: MURRAY, P.J., and DONOFRIO and BORRELLO, JJ.

PER CURIAM.

Charging-Party Appellant Reese Professional Support Personnel Association MEA/NEA (the Association) claims an appeal from a decision of the Michigan Employment Relations Commission (MERC) granting summary disposition to respondent Reese Public School District (the District). We affirm.

## I. BACKGROUND

In this case the Association alleges that the District engaged in unfair labor practices by subcontracting the services of secretaries, who are members of the Association, without bargaining. The Association is the sole bargaining representative of the bargaining unit, which included secretaries, and had been parties to numerous collective bargaining agreements with the District. There was and is no dispute that the District is subject to the provisions of the Public Employment Relations Act (PERA), MCL 423.201 *et seq*. In 2011 the District voted to privatize secretarial services, and as a result six secretaries lost their jobs. The Association alleged that secretarial services were not "noninstructional support services" for which collective bargaining did not apply under MCL 423.215(3)(f), but rather that secretarial services were instructional support services. According to the Association, the secretarial positions could be subcontracted only when the parties were at an impasse, that no such impasse existed, and the District's unilateral action interfered with the employee's rights and constituted a failure to bargain in good faith in violation of MCL 423.210(1)(a) and (e).

The MERC rejected the Association's arguments. In doing so, the MERC noted that in *Pontiac Sch Dist v Pontiac Ed Ass'n*, 295 Mich App 147; 811 NW2d 64 (2012), this Court affirmed a MERC decision finding that physical and occupational therapists provided necessary

training and instruction for certain teachers, and so "did not fall within the group of noninstructional support services subject to § 15(3)(f) of PERA." In addition, the MERC noted that in *Harrison Community Sch*, 23 MPER 82 (2010), it found that paraprofessionals—such as teachers aides—provided instructional support services because they worked directly with teachers and students, notwithstanding the fact that they also did some clerical work. In the end, the MERC concluded that the evidence showed that the building secretaries largely performed noninstructional clerical and administrative duties, and rejected the Association's claim that the secretaries should be considered to provide instructional services because they gave assistance to professional staff members who provided instructional services to students. The MERC dismissed the Association's charges in their entirety.

## II. ANALYSIS

On appeal, the Association argues that the actions by the District in unilaterally privatizing the secretaries violates MCL 423.210(1)(a) and (e) by bargaining in bad faith and repudiating its obligation to bargain in good faith. More particularly, the Association argues that the MERC erred in ruling that its secretarial members preformed "noninstructional support services" under section MCL 423.215(3)(f).

An issue involving statutory interpretation presents a question of law that we review de novo. *Pontiac Sch Dist*, 295 Mich App at 152. We review a MERC decision under Const 1963, art 6, § 28 and MCL 423.216(3). The MERC's findings of fact are conclusive if they are supported by competent, material, and substantial evidence on the whole record. The MERC's legal determination must not be disturbed unless the MERC violates a provision of the constitution or a statute, or makes a substantial and material error of law. The MERC's legal rulings are not entitled to the same deference as are its factual findings. *Branch Co Bd of Comm'rs v Int'l Union, United Auto, Aerospace & Agricultural Implement Workers of America, UAW*, 260 Mich App 189, 192-193; 677 NW2d 333 (2003).

A public employer, or an officer or agent of a public employer, is prohibited by statute from "[i]nterfer[ing] with, restrain[ing], or coerc[ing] public employees in the exercise of their rights guaranteed in section 9[,]" MCL 423.210(1)(a), or "[r]efusing to bargain collectively with the representatives of its public employees," MCL 423.210(1)(e). However, collective bargaining does not cover all subjects that might arise between a public employer and its employees. MCL 423.215(3)(f) provides that collective bargaining does not apply to:

> The decision of whether or not to contract with a third party for 1 or more noninstructional support services; or the procedures for obtaining the contract for noninstructional support services other than bidding described in this subdivision; or the identity of the third party; or the impact of the contract for noninstructional support services on individual employees or the bargaining unit. However, this subdivision applies only if the bargaining unit that is providing the noninstructional support services is given an opportunity to bid on the contract for the noninstructional support services on an equal basis as other bidders.

"The primary goal of statutory interpretation is to ascertain the legislative intent that may reasonably be inferred from the statutory language. The first step in that determination is to

review the language of the statute itself. Unless statutorily defined, every word or phrase of a statute should be accorded its plain and ordinary meaning, taking into account the context in which the words are used." *Krohn v Home-Owners Ins Co*, 490 Mich 145, 156; 802 NW2d 281 (2011) (quotation marks and citations omitted).

In *Pontiac Sch Dist*, this Court held that, pursuant to MCL 423.215(3)(f), collective bargaining cannot include matters pertaining to third-party contracts relative to noninstructional support services, because the legislature gave sole authority over that issue to the public school employer. *Pontiac Sch Dist*, 295 Mich App at 153. MCL 423.215(3)(f) does not define the phrase "noninstructional support services." Therefore, "the words should be given their plain and ordinary meaning, which may be ascertained through use of a dictionary." *Pontiac Sch Dist*, 295 Mich App at 153.

The *Pontiac Sch Dist* Court defined the term noninstructional as follows:

The word "non" is defined as "a prefix meaning 'not,' usu. having a simple negative force, as implying a mere negation or absence of something[.]" *Random House Webster's College Dictionary* (2000). The word "instruction" is defined as "the act or practice of instruction or teaching[,] education . . . [;] knowledge or information imparted . . . [;] [or] the act of furnishing with authoritative directions." *Id.* Consequently, the term "instruction" is not ambiguous, but rather is broad in definition because it applies to "knowledge or information imparted" without placing qualifications or restrictions on the type of knowledge or information imparted. It fails to limit the knowledge or information imparted to the core curriculum, as inaccurately contended by the school district. In sum, positions in which individuals impart knowledge or information to students may be subject to collective bargaining under MCL 423.215(3)(f). [*Id*. at 154 (brackets and ellipses in original).]

The crucial issue in this case is whether the secretaries' duties involved support that imparted knowledge or information to students.

The *Pontiac Sch Dist* Court agreed with the MERC that work performed by occupational and physical therapists, which included consulting closely with teachers and working with students to give them skills to perform better in the classroom, constituted instructional services. *Pontiac Sch Dist*, 295 Mich App at 154-162. This Court acknowledged that the therapists were not teachers, but stressed that the therapists worked "in conjunction with teachers to impart knowledge and information." *Id*. at 158. This Court noted that the MERC relied on the plain and unambiguous meaning of MCL 423.215(3)(f) to determine that the therapists' work was instructional in nature. *Id*. at 160.[1]

---

[1] In *Harrison Community Schools*, 23 MPER 82 (2010), the MERC defined the phrase "noninstructional support services" to mean "support services that are not specific to the educational goals of schools," and that the suggested standard that "support services that do not involve imparting the curriculum to students was too narrow and unsupported by the legislative

The MERC's findings are supported by competent, material and substantial evidence on the whole record. The evidence in this case, as found by the MERC, supports a finding that the services provided by the secretaries were primarily clerical in nature. The secretaries' duties consisted primarily of administrative and clerical support services such as answering the phones, arranging meetings, and taking and maintaining records. The secretaries performed only incidental and occasional duties relating to students such as handling work permits and disciplinary actions. They would take questions from students who were in the office for disciplinary purposes. These duties were not instructional. The secretaries did not consult with teachers to develop ways to enable students to perform better in the classroom, as did the therapists in *Pontiac Sch Dist*, and did not work directly with students and assist students with lessons.

For these reasons we hold that the secretaries performed duties that were noninstructional support services. The MERC did not err by holding that the parties were not required to bargain over the replacement of the secretaries. MCL 423.215(3)(f).[2] For this same reason, we hold that the MERC did not err in finding that the District did not repudiate any applicable contractual language.

Affirmed.

/s/ Christopher M. Murray
/s/ Pat M. Donofrio

---

history or rules of statutory construction." *Harrison Community Sch*, 23 MPER 82 at 5-6. As a result, it found that aides working for the school district in classrooms and libraries performed duties that were instructional in nature because the aides worked directly with students, assisted students with lessons, and worked with students to develop good classroom behavior. The MERC concluded that the aides provided students with instructional support; therefore, their duties were instructional in nature, notwithstanding the fact that they also performed some clerical work. *Id*. at 6.

[2] The dissenting opinion's main objection seems to be the purported use of a "substantially instructional" test in determining the applicability of the statutory term "noninstructional support services." But that phrase, "substantially instructional," is contained nowhere in the *Pontiac Sch Dist* decision, nor in our opinion in this case. And, although the MERC in this case found that "[a]lthough the secretaries in this case may occasionally provide oversight for students and respond to infrequent questions from them, that is not a substantial part of their duties," that was merely a finding of fact, not the implementation of a categorical test for use under the statute. In any event, we have not employed such a test, but have merely concluded that the MERC's findings were supported by competent, material and substantial evidence, and those findings compel the conclusion that these secretaries provided noninstructional support services.