# STATE OF MICHIGAN

# COURT OF APPEALS

DETROIT HOUSING COMMISSION,

        Respondent-Appellee,

v

NEIL SWEAT,

        Charging Party-Appellant.

UNPUBLISHED
February 2, 2016

No.  323453
Michigan Employment Relations
Commission
LC No.  11-000799

Before:  SHAPIRO, P.J., and O'CONNELL and BORRELLO, JJ.

PER CURIAM.

Charging party appeals as of right an order from the Michigan Employment Relations Commission ("MERC") dismissing his charge against respondent, the Detroit Housing Commission ("DHC").  For the reasons set forth in this opinion, we affirm.

## I.  BACKGROUND.

This case arises out of two disciplinary actions DHC levied against charging party for substandard work performance, the second of which resulted in termination of his employment on May 20, 2009.  On March 18, 2011, charging party filed a charge with the MERC against DHC, alleging that his termination was wrongful and constituted an unfair labor practice. Charging party alleged that DHC fired him without just cause, a violation of the collective bargaining agreement.  Regarding his 2008 suspension, charging party disputed the merits of all four disciplinary grounds and asserted that the 30-day suspension was unfair because DHC disciplinary guidelines mandated a 5-day suspension for an employee's first instance of poor work performance.  Regarding the 2009 termination, charging party asserted that he could disprove DHC's allegations and that DHC improperly fired him because discipline under the collective bargaining agreement was intended to correct employees' performance, not simply terminate their employment.  Additionally, charging party wrote the following:

> There is evidence to suggest that the employer targeted me for termination for malicious reasons.  Therefore, I am also charging the employer with terminating me out of retaliation, and discriminating against me because of my age and disability.  I filed a grievance because the employer claimed that the union agreed to a two[-]tier pay system.  This is a gross misstatement and given time I could have exposed the lies.  I was terminated less than three months later.

-1-

On April 22, 2011, the Administrative Law Judge (ALJ), to whom the case had been assigned, issued an order directing charging party to show cause why his claim against DHC should not be dismissed on timeliness grounds and for failure to state a claim under the PERA by way of reply, charging party wrote a letter to the ALJ, in which he asserted that his claim was timely because he "was required to seek a remedy from my union before I could file a charge against my employer and my union." Importantly, charging party did not address the question of whether his claim against DHC was cognizable under the PERA.

The case lay dormant for nearly two years, until charging party filed a supplemental position statement on January 10, 2013. The bulk of the statement, both factually and legally, addressed charging party's claims against his labor union. Charging party devoted less than a full page to his claim against DHC, categorically stating that "just and proper cause to terminate his employment did not exist" because DHC failed to sufficiently investigate the case before firing him, provide him with requested documentation regarding the 2009 incident, and discipline him fairly and in good faith.

On December 20, 2013, the ALJ issued his decision and recommended order regarding charging party's claims against DHC. According to the ALJ, charging party had misstated Michigan law when he argued in his April 22, 2011 letter that the 6-month PERA statute of limitations period did not begin to run until he had exhausted his internal union remedies. The ALJ ruled that the statute thus barred charging party's claim because DHC had fired him on May 20, 2009, and he did not file a charge until March 18, 2011.

Further, assuming that charging party's charge was timely, the ALJ held that he had failed to state a claim upon which relief could be granted. The ALJ noted that the PERA "does not prohibit all types of discrimination or unfair treatment, nor does the Act provide a remedy for an employer's breach of a collective bargaining agreement." Additionally, the ALJ wrote that the MERC was not the proper forum for whistleblower claims, allegations of discrimination, or other generalized claims of unfair treatment. According to the ALJ, the MERC's jurisdiction in an employee-employer context was limited to considering whether the employer had interfered with, restrained, coerced, or discriminated against an employee to encourage or discourage union activity. The ALJ concluded that the MERC was "foreclosed from making a judgment on the merits or fairness" of DHC's actions because charging party had failed to provide a factual basis demonstrating that he "engaged in union activities for which he was subjected to discrimination or retaliation in violation of the Act." The ALJ recommended dismissal of the charge.

On February 6, 2014, charging party filed exceptions to the ALJ's decision and recommended order. Regarding the ALJ's conclusion that his claim was untimely, charging party asserted that he had first filed a charge against DHC alleging an unfair labor practice on November 17, 2009—within six months of his firing on May 20, 2009—but that "[t]he employer and the union conspired to get the charge dismissed." Charging party further explained that "[t]he union had the charge of wrongful termination dismissed because the Judge allowed the union to intervene and take control of my wrongful termination charge against the employer."[1]

---

[1] We note that the ALJ's record is devoid of evidence regarding this earlier charge against DHC.

As a result, charging party contended that the ALJ erred in finding that the statute of limitations barred his claim. Charging party also insisted that he was required to exhaust his internal remedies before filing a charge against DHC; his charge on March 18, 2011, was thus timely because he had not exhausted his internal union remedies until earlier that month.

For the first time, charging party also asserted in his exceptions that "a wrongful termination of a union official is an unfair labor practice because it may discourage union activity." In support of this proposition, charging party argued that DHC had "clearly" targeted him for termination, and that, consequently, his former coworkers were discouraged from engaging in union activity. To support his claim, charging party alleged that no current DHC employees were willing to take his former place as chief union steward "for the fear of the employer targeting them for termination."

On August 14, 2014, the MERC issued its decision and order. The MERC summarized charging party's exceptions, then simply noted: "We have reviewed [c]harging [p]arty's [e]xceptions and found them to be without merit." The MERC also wholly adopted the ALJ's findings of fact and his legal reasoning and dismissed charging party's claims on timeliness grounds and for failure to state a claim under the PERA. This appeal then ensued.

## II. ANALYSIS.

On appeal, charging party contends that the MERC decision was erroneous because charging party brought forth proof that would constitute an unfair labor practice against respondent.

We review de novo questions of law, including matters of statutory interpretation. *Pontiac Sch Dist v Pontiac Ed Ass'n*, 295 Mich App 147, 152; 811 NW2d 64 (2012). We will not disturb the MERC's legal determinations unless they "violate a constitutional or statutory provision or they are based on a substantial and material error of law." *Branch Co Bd of Comm'rs v Int'l Union, United Auto, Aerospace & Agricultural Implement Workers of America, UAW*, 260 Mich App 189, 193; 677 NW2d 333 (2003).

The Michigan Public Employment Relations Act (PERA), MCL 423.201 *et seq.*, governs public labor relations in Michigan. *Detroit Fire Fighters Ass'n, IAFF Local 344 v Detroit*, 482 Mich 18, 28; 753 NW2d 579 (2008). As a threshold matter, neither party disputes that DHC is a governmental employer subject to the PERA or that charging party was a member of a labor union while employed with DHC. Resolution of the issue thus requires interpretation of the PERA's provisions.

The primary purpose of statutory interpretation is to identify and effectuate legislative intent. *Mich Ed Ass'n v Secretary of State (On Rehearing)*, 489 Mich 194, 217; 801 NW2d 35 (2011). The first step in identifying that intent "is to review the language of the statute itself. Unless statutorily defined, every word or phrase of a statute should be accorded its plain and ordinary meaning, taking into account the context in which the words are used." *Krohn v Home-Owners Ins Co*, 490 Mich 145, 156; 802 NW2d 281 (2011) (citation and quotation marks omitted). When the language of a statute is clear and unambiguous, "no further judicial construction is required or permitted, and the statute must be enforced as written." *Mount*

*Pleasant Pub Sch v Mich AFSCME Council 25*, 302 Mich App 600, 608; 840 NW2d 750 (2013) (citation and quotation marks omitted). A statutory provision is ambiguous when it is "capable of being understood by reasonably well-informed persons in two different senses," such as when a word has an unclear meaning or when application of the statute to facts renders the statute's correct application uncertain. *Peterson v Magna Corp*, 484 Mich 300, 329; 773 NW2d 564 (2009).

MCL 423.216 provides that "[v]iolations of section 10 shall be deemed to be unfair labor practices remediable" by the MERC under the PERA. MCL 423.210, meanwhile, provides the following, in relevant part:

> (1) A public employer or an officer or agent of a public employer shall not do any of the following:
>
> (a) Interfere with, restrain, or coerce public employees in the exercise of their rights guaranteed in section 9.
>
> (b) Initiate, create, dominate, contribute to, or interfere with the formation or administration of any labor organization. . . . A public employer may permit employees to confer with a labor organization during working hours without loss of time or pay.
>
> (c) Discriminate in regard to hire, terms, or other conditions of employment to encourage or discourage membership in a labor organization.
>
> (d) Discriminate against a public employee because he or she has given testimony or instituted proceedings under this act.
>
> (e) Refuse to bargain collectively with the representatives of its public employees, subject to section 11.

The "rights guaranteed in section 9" referenced in MCL 423.210(1)(a) include employees' rights to "[o]rganize together or form, join, or assist in labor organizations; engage in lawful concerted activities for the purpose of collective negotiation or bargaining or other mutual aid and protection; or negotiate or bargain collectively with their public employers through representatives of their own free choice[,]" or to refrain from participating in any of the same activities. MCL 423.209(1).

Germane to this matter, PERA "does not proscribe breach of a collective bargaining agreement or 'unfairness'; an employee may be terminated for a good reason, bad reason, or no reason at all[,]" so long as the employer does not terminate the employee for exercising rights guaranteed by MCL 423.209. *Ingham Co v Capitol City Lodge No 141 of the Fraternal Order of Police*, 275 Mich App 133, 143; 739 NW2d 95 (2007) (citation and quotation marks omitted). Further, "[w]hen a union steward is disciplined for violating job rules and not because of his position as a union official, the steward cannot look to his union status for protection[,]" even if engaging in otherwise protected activity under the PERA. *Id*. at 146 (citation and quotation marks omitted). Ultimately, "[t]he party asserting a claim under the PERA has the burden of

establishing an unfair labor practice." *Org of Sch Administrators & Supervisors, AFSA, AFL-CIO v Detroit Bd of Ed*, 229 Mich App 54, 64; 580 NW2d 905 (1998).

Contrary to charging party's argument on appeal, an employer's contract breach cannot constitute an unfair labor practice under the PERA absent a violation of MCL 423.210. Charging party does not assert that he was engaged in a protected activity under MCL 423.209(1), nor does he contend that DHC committed any of the actions under MCL 423.210(1) that would constitute an unfair labor practice under MCL 423.216. Instead, charging party posits that DHC could be liable under the PERA simply because his firing—which had nothing to do with union activity—violated the collective bargaining agreement and thereby discouraged participation in union activities on the part of his ex-coworkers.

Charging party failed to plead a cognizable claim under PERA. Charging party failed to plead any facts that could lead the ALJ, the MERC or this Court to make a finding that he was engaged in any type of protected activity at the time of his discharge. Further, charging party failed to plead any facts which could lead to a finding that his rights under PERA were violated by respondent. Simply put, charging party failed to plead an action under PERA.

Moreover, this Court has explicitly held that an employer may discharge an employee at will, for violation of workplace rules, for unfair reasons or no reason at all, or even through a breach of the collective bargaining agreement without bringing the discharge under the PERA's purview. *Ingham Co*, 275 Mich App at 143, 147. Further, charging party was free to pursue his claim that DHC violated the collective bargaining agreement—he simply was required to pursue it in a venue other than the MERC because his termination did not implicate the PERA. See *Bay City Sch Dist v Bay City Ed Ass'n, Inc*, 425 Mich 426, 436-440; 390 NW2d 159 (1986) (holding that the MERC and courts have concurrent jurisdiction when "a controversy gives rise to both contractual and statutory claims" and that a party must seek relief in the proper venue despite the inefficiency of a bifurcated process). Accordingly, we fail to discern a constitutional or statutory violation or a substantial and material error of law in the MERC's implicit holding that an unfair labor practice under the PERA is limited to an employer's conduct under MCL 423.210. *Branch Co Bd of Comm'rs*, 260 Mich App at 193.

Additionally, charging party contends that the MERC erred in dismissing his charge because he raised a proper hybrid claim and supported it with evidence that DHC breached the collective bargaining agreement. We review de novo a trial court's decision regarding summary disposition. See *Landin v Healthsource Saginaw, Inc*, 305 Mich App 519, 523; 854 NW2d 152 (2014). The Michigan Administrative Code provides grounds for summary disposition in administrative proceedings, including failure to state a claim for relief. Mich Admin Code R 423.165(2)(d). Because this provision parallels a summary disposition motion under MCR 2.116(C)(8), we may apply by analogy the established standards for reviewing motions under that subrule.

"A motion under MCR 2.116(C)(8) tests the legal sufficiency of the claim on the pleadings alone to determine whether the plaintiff has stated a claim on which relief may be granted." *Landin*, 305 Mich App at 523 (citation and quotation marks omitted). "Summary disposition under subrule (C)(8) is appropriate if no factual development could justify the plaintiff's claim for relief." *Id.* (citation and quotation marks omitted).

Inasmuch as charging party classifies his claim as a "hybrid" claim—analogous to a federal § 301 action—it is appropriate to look to federal precedent where necessary to resolve the issue.[2] See *Demings v City of Ecorse*, 423 Mich 49, 53; 377 NW2d 275 (1985) (noting that Michigan courts may "look for guidance to . . . [construction of] the analogous provisions of the NLRA by the National Labor Relations Board . . . and the Federal courts" because the PERA is modeled on the National Labor Relations Act). See, also, *Goolsby v Detroit*, 419 Mich 651, 660 n5; 358 NW2d 856 (1984).

Generally speaking, Michigan courts follow the rule that "an employee may not maintain an action against his employer for an alleged breach of a collective bargaining agreement where the employee has not first exhausted the grievance and arbitration procedures established under the collective bargaining agreement upon which he bases his suit." *Pompey v Gen Motors Corp*, 385 Mich 537, 560; 189 NW2d 243 (1971). An exception to this rule, however, is a so-called hybrid/§ 301 action, in which an aggrieved employee may, under certain conditions, allege both a breach of the duty of fair representation by his or her labor union and a breach of the collective bargaining agreement by the employer before he or she has exhausted internal remedies. *DelCostello v Int'l Brotherhood of Teamsters*, 462 US 151, 164-165; 103 S Ct 2281; 76 L Ed 2d 476 (1983). Hybrid/§ 301 suits thus allow a federal district court, rather than the NLRB, to hear claims involving conduct that the NLRA arguably protects or prohibits. *LaBuhn v Bulkmatic Transp Co*, 865 F2d 119, 121 (CA 7, 1988). Classifying a claim as a hybrid/§ 301 action, however, fails to enlarge the jurisdiction of the NLRB or the MERC or permit either organization to hear a claim that does not involve an unfair labor practice as defined by the NLRA or the PERA. See 29 USC 160; MCL 423.210.

Even presuming charging party presented a prima facie example of a hybrid/§ 301 claim because he raised the issues of DHC's alleged contract breach and his union's alleged breach of the duty of fair representation in his pleadings, he could have pursued the hybrid claim in circuit court, see *LaBuhn*, 865 F2d at 121, where he would have been required to present sufficient facts on both aspects of the claim to survive summary disposition, *Knoke v East Jackson Pub Sch Dist*, 201 Mich App 480, 485; 506 NW2d 878 (1993). While charging party also filed a complaint in circuit court, we note that in lieu of filing that claim as a hybrid/§ 301 claim, charging party attempted to initiate the claim in the MERC, whose jurisdiction over claims against an employer is restricted to unfair labor practices that violate MCL 423.210. MCL 423.216. Review of the record reveals that charging party alleged that DHC fired him for "malicious" reasons including his status as a potential whistleblower, age, and disability, but, again, his pleadings failed to demonstrate that his termination constituted an unfair labor practice as defined by the PERA. MCL 423.210. Consequently, no factual development could justify his claim for relief under the PERA, and the MERC correctly dismissed his charge against DHC. *Landin*, 305 Mich App at 523.

---

[2] Under § 301(a) of the Labor Management Relations Act, 29 USC 185(a), an employee may concurrently sue his or her labor union for a breach of the duty of fair representation and his or her employer for a breach of the collective bargaining agreement. See *Murad v Prof and Admin Union Local 1979*, 239 Mich App 538, 542-543; 609 NW2d 588 (2000).

Having decided that charging party failed to raise a legally sufficient issue under PERA, and therefore all his claims against respondent were properly dismissed on their merits, we need not address charging party's contention that his claims were brought within the applicable statute of limitations.

Affirmed.

/s/ Douglas B. Shapiro
/s/ Peter D. O'Connell
/s/ Stephen L. Borrello